[No. 65527-2-I. Division One. July 2, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. HECTOR SERANO SALINAS, *Appellant*.

*Gregory C. Link* and *Susan F. Wilk* (of *Washington Appellate Project*), for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Hilary A. Thomas, Deputy*, for respondent.

¶1 BECKER, J. — Appellant Hector Salinas was convicted of rape based in part on evidence found on clothing taken from him after he was arrested. He contends the seizure and search of his clothing should have been suppressed because it was warrantless. We find no error. The search of a person incident to arrest is a valid exception to the warrant requirement, and its scope is unaffected by recent developments in the law pertaining to searches of automobiles incident to arrest.

## FACTS

¶2 The rape occurred in Bellingham near Maritime Heritage Park on the night of June 20, 2008. The victim, DP, was homeless and living on the streets. She awoke to find a man sitting close to her. The man reached over and kissed her. He spoke Spanish. When DP stood up, the man grabbed her and hit her in the face. He had a knife in his hand. He raped her. Then he dragged her to a different area of the park, where the assault continued.

¶3 Afterward, DP flagged down a police car and told the officer she had been raped by a man with a knife. It was about 2:00 a.m. DP's face was bleeding and she could barely talk. She described her assailant as a Hispanic man wear-

ing a stocking cap and having a mustache with possible chin hair. A canine officer arrived with his dog and began to track.

¶4 The dog led the officers to a man in a sleeping bag. They identified themselves as police and directed him to show his hands or the dog would be released. They were able to see that his appearance matched the description given by the victim. The man pulled his sleeping bag over his head, picked up a dark jacket, and ran towards the waterfront. The officers gave chase and found him hiding against a wall not far away. They ordered him to lie down on the ground. He kept trying to stand up. The police released the dog and permitted him to bite the man on the leg to get him to comply with their orders. The man then complied with the order to lie down. The police placed him in handcuffs.

¶5 The man had several identification cards with different names and dates of birth. The officers provided the information on these cards to police dispatch. They were eventually able to identify the man as Hector Salinas. They learned he was wanted on a felony arrest warrant out of Wenatchee. Salinas was taken to the police station where he was interviewed. The police conducted a search incident to arrest and collected his clothes as evidence.

¶6 The State charged Salinas with three counts of first degree rape and one count of first degree kidnapping. At trial, the jury heard testimony from forensic scientists who had examined Salinas' jacket, his underwear, and a rape kit containing samples taken from DP at the hospital on the night of the rape. DNA (deoxyribonucleic acid) evidence extracted from bloodstains on the jacket indicated that at least some of the blood was DP's. The DNA profiles from Salinas' underwear were consistent with a mixture of DP's and Salinas' DNA. Analysis conducted on swabs from the rape kit produced a DNA profile that matched Salinas'.

¶7 Salinas testified in his own defense. He claimed he was not in the area of the park where the attack happened.

On that night, he said, he found a sleeping bag and a bag of clothing, changed some of his clothes, went to sleep, and awoke to yelling. He ran away, not realizing he was being pursued by police.

¶8 A jury convicted Salinas as charged. The court sentenced him to life in prison as a persistent offender. This appeal followed.

## MOTION TO SUPPRESS

¶9 Before trial, Salinas moved under CrR 3.6 to suppress evidence, including his identification and the DNA evidence obtained from his clothing. He assigns error to the order denying the motion.

### Identifying when the arrest took place

¶10 Salinas argues that he was searched incident to arrest before the arrest actually took place, in violation of article I, section 7 of the Washington Constitution.[1]

¶11 The search incident to arrest exception to the warrant requirement is narrower under article I, section 7 than under the Fourth Amendment. *State v. O'Neill*, 148 Wn.2d 564, 584, 62 P.3d 489 (2003). Under the Washington Constitution, a lawful custodial arrest supported by probable cause to arrest is a constitutional prerequisite to any search incident to arrest. *State v. Moore*, 161 Wn.2d 880, 885, 169 P.3d 469 (2007). It is the arrest, not probable cause to arrest, that constitutes the necessary authority of law for a search incident to arrest. *O'Neill*, 148 Wn.2d at 585-86; *State v. Patton*, 167 Wn.2d 379, 393, 219 P.3d 651 (2009). " 'It states the obvious to observe that where a person is not under arrest there can be no search incident thereto.' " *O'Neill*, 148 Wn.2d at 585, quoting *State v. Parker*, 139 Wn.2d 486, 496-97, 987 P.2d 73 (1999).

---

[1] Article I, section 7 provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

¶12 As *O'Neill* demonstrates, not every seizure is an arrest. Police effect the seizure of a person when they objectively manifest that they are restraining the person's movement, and a reasonable person would believe that he or she is not free to leave. *State v. Lund*, 70 Wn. App. 437, 444, 853 P.2d 1379 (1993), *review denied*, 123 Wn.2d 1023 (1994). A seizure may be only a limited detention for issuing a traffic citation, *see State v. Hehman*, 90 Wn.2d 45, 578 P.2d 527 (1978), or for conducting a brief investigation of possible criminal activity, as in a *Terry*[2] stop. Such seizures are distinct from an actual custodial arrest to detain the person for the purpose of later charging and trial. *Lund*, 70 Wn. App. at 444.

¶13 It is undisputed that Salinas was *seized* at the end of the chase when he finally obeyed officers' commands to lie on the ground and was handcuffed. It is also undisputed on appeal that the police had probable cause to arrest him for rape at that time. The issue is whether the trial court correctly concluded that the seizure was a custodial *arrest*.

¶14 Salinas asserts that he was not under arrest when the police examined his identification cards. The officers testified that after they identified Salinas and learned of the outstanding felony warrant, they arrested him on the warrant. Salinas contends that the arrest on the warrant was invalid because it was dependent on identification information the police unlawfully obtained from his wallet before they arrested him.[3]

¶15 " 'An arrest takes place when a duly authorized officer of the law manifests an intent to take a person into custody and actually seizes or detains such person. The existence of an arrest depends in each case upon an

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[3] Salinas' appellate brief asserts that the officers reached into his pocket, removed his wallet, and searched it. The relevant finding simply states, "The officers obtained the defendant's name and identification."

objective evaluation of all the surrounding circumstances.' " *Patton*, 167 Wn.2d at 387, quoting 12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 3104, at 741 (3d ed. 2004). In *Patton*, a police officer pulled his vehicle into a driveway behind the defendant's parked car with his lights activated. The officer immediately approached the defendant and told him he was under arrest and to put his hands behind his back. "Under an objective evaluation of all the surrounding circumstances, an arrest occurred." *Patton*, 167 Wn.2d at 387.

¶16 The relevant inquiry to determine whether a person is in custody is "whether a reasonable person in the suspect's position at the time would have thought so." *State v. Rivard*, 131 Wn.2d 63, 75, 929 P.2d 413 (1997). The test is objective. *State v. Reichenbach*, 153 Wn.2d 126, 135, 101 P.3d 80 (2004). It is not dependent on the subjective intent of the officer making the detention. *State v. Radka*, 120 Wn. App. 43, 49, 83 P.3d 1038 (2004). Rather, it hinges upon the manifestation of the arresting officer's intent. *Radka*, 120 Wn. App. at 49.

¶17 "Typical manifestations of intent indicating custodial arrest are the handcuffing of the suspect and placement of the suspect in a patrol vehicle, presumably for transport." *Radka*, 120 Wn. App. at 49; see also *Rivard*, 131 Wn.2d at 76. "Whether an officer informs the defendant he is under arrest is only one of all of the surrounding circumstances, albeit an important one." *Patton*, 167 Wn.2d at 387 n.6. Here, the record contains no evidence about when, if ever, Salinas was directly told he was under arrest. We therefore consider other indicators.

¶18 After tracking Salinas to where he lay in his sleeping bag, the officers identified themselves as police, shined a flashlight in his face, and ordered him to show his hands. Seeing his face, they recognized that he matched the description given by the victim. When Salinas ran away toward the waterfront, police chased him down and ordered him to lie on the ground. The canine officer allowed the dog

to bite Salinas to make him comply with their order. The officers handcuffed Salinas as he was lying on the ground. A reasonable person in this situation would have thought he was being arrested and taken into custody, not merely being detained for a brief investigation. The officers' testimony that they took him into custody and placed him under arrest for rape at this point is not negated by their testimony that they formally arrested Salinas on the warrant. The custodial arrest supplied the lawful authority justifying a search incident to arrest.

Scope of search incident to arrest

¶19 Salinas next contends the seizure and examination of his clothing was unlawful because it occurred without a warrant.

¶20 Under article I, section 7 of the Washington Constitution, warrantless searches are unreasonable per se, and any exceptions to the warrant requirement are narrowly drawn. *Parker*, 139 Wn.2d at 496. At the time the state constitution was adopted, it was "universally recognized that warrantless searches were allowed of the person of an arrestee when incident to lawful arrest." *State v. Ringer*, 100 Wn.2d 686, 692, 674 P.2d 1240 (1983). It was at first a narrow exception, "intended solely to protect against frustration of the arrest itself or destruction of evidence by the arrestee." *Ringer*, 100 Wn.2d at 698. Eventually, the permissible scope of the search expanded to the point where it "threatened to swallow the general rule that a warrant is required." *Ringer*, 100 Wn.2d at 698-99. This was particularly true in automobile search cases. In *Ringer*, troopers had searched the defendant's vehicle after he was handcuffed and removed from its immediate vicinity. The *Ringer* court concluded the search of the vehicle exceeded the officer's authority to search incident to arrest, reversed the conviction, and reaffirmed the narrowness of the search incident to arrest exception. The court chose "to return to the protections of our own constitution and to interpret

them consistent with their common law beginnings." *Ringer*, 100 Wn.2d at 699.

¶21 The Supreme Court overruled *Ringer*, but only temporarily, in *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986). Today, *Ringer* is once again controlling law. *State v. Valdez*, 167 Wn.2d 761, 773-77, 224 P.3d 751 (2009); *State v. Snapp*, 174 Wn.2d 177, 275 P.3d 289 (2012). The court's recent cases return "to the common law origins of the search incident to arrest without a warrant and its dual justifications of officer safety and preservation of evidence." *Snapp*, 174 Wn.2d at 194.

¶22 Under the common law, the general rule was that "where a person is legally arrested, the arresting officer has a right to search such person, and take from his possession money or goods which the officer reasonably believes to be connected with the supposed crime, and discoveries made in this lawful search may be shown at the trial in evidence." *State ex rel. Murphy v. Brown*, 83 Wash. 100, 105-06, 145 P. 69 (1914), *quoted with approval in Ringer*, 100 Wn.2d at 693. The scope of the warrantless search of a person incident to arrest under article I, section 7 corresponds to the common law right. *Ringer*, 100 Wn.2d at 693. It is distinct from the exigent circumstances exception to the warrant requirement. *Ringer*, 100 Wn.2d at 700-01. Indeed, the authority for a full blown evidentiary search of the person incident to arrest does not stem from exigency but rather from "the fact of the arrest itself and the concomitant lessening of the *arrestee's* privacy interest." *Parker*, 139 Wn.2d at 499. Once a person is arrested, there is a diminished expectation of privacy of the person, including clothing and personal possessions closely associated with clothing. *State v. White*, 44 Wn. App. 276, 278, 722 P.2d 118, *review denied*, 107 Wn.2d 1006 (1986). The fact of a lawful arrest is enough by itself to justify a warrantless search of the person incident to arrest. *State v. LaTourette*, 49 Wn. App. 119, 128-29, 741 P.2d 1033 (1987), *review denied*, 109 Wn.2d 1025 (1988).

¶23 Salinas contends the warrantless seizure and examination of his clothing at the police station, as well as the forensic analysis of the clothing that occurred later at the lab, were impermissible "to the extent" they exceeded the necessary justifications of ensuring officer safety and preserving evidence of the crime of arrest.[4] Beyond this conclusory statement, he does not delineate any point at which he believes the seizure and examination of his clothing exceeded the permissible scope of a search incident to arrest. We conclude the police did not require a warrant to seize and examine the clothing. It is obvious that clothing can contain evidence of rape and that it was necessary to preserve it.

¶24 In *Brown*, the court discussed favorably the common law rule permitting removal of an arrestee's shoes to compare them with tracks at the scene of the crime. *Brown*, 83 Wash. at 106. The court had already approved a similar scenario in *State v. Nordstrom*, 7 Wash. 506, 35 P. 382 (1893), *aff'd*, 164 U.S. 705, 17 S. Ct. 997, 41 L. Ed. 1183 (1896). In *Nordstrom*, the State sought to connect the defendant with a homicide by showing in evidence the muddy boots and socks the sheriff took from the defendant after arresting him upon his arrival at the jail. The court found no error. "But it has never been held that personal effects of every kind could not be taken from the person of a prisoner and used upon his trial for what they may be worth as criminating evidence." *Nordstrom*, 7 Wash. at 510, quoted in *Parker*, 139 Wn.2d at 511. An arrestee's shoes were taken from a jail property bag and compared to shoeprints at the crime scene in *State v. Cheatam*, 150 Wn.2d 626, 654-55, 81 P.3d 830 (2003). Under article I, section 7, no warrant was required. The shoes having already been lawfully exposed to police view in the course of a lawful search, their owner was "no longer entitled to hold a privacy interest in the searched items free from further governmental search." *Cheatam*, 150 Wn.2d at 638-43, 655.

---

[4] Brief of Appellant at 22.

¶25 Taking clothing from an arrestee to see if it contains the rape victim's DNA is similar to taking boots from an arrestee to see if they match tracks. Salinas no longer held a privacy interest in his own clothing once it had been lawfully seized as evidence.

¶26 In summary, Salinas was lawfully arrested for rape. The seizure and forensic examination of his clothing without a warrant was a proper exercise by the State of its right to take from an arrestee's person materials reasonably believed to be connected with the alleged crime. The police acted properly within the scope of a search incident to a lawful custodial arrest. The trial court did not err in denying the motion to suppress.

Opportunity to post bail—RCW 10.31.030

¶27 Salinas contends the DNA evidence obtained from his clothing should have been excluded for the additional reason that he was not given the opportunity to post bail before his clothing was seized.

¶28 A person arrested under a warrant must be given an opportunity to post bail before being subjected to an inventory search. RCW 10.31.030; *State v. Smith*, 56 Wn. App. 145, 783 P.2d 95 (1989), *review denied*, 114 Wn.2d 1019 (1990); *State v. Caldera*, 84 Wn. App. 527, 528, 929 P.2d 482, *review denied*, 131 Wn.2d 1022 (1997). The purpose of the statute is to provide a defendant with notice of the charge and the amount of bail as soon as possible after arrest so that the defendant may avoid incarceration by posting bail. *State v. Ross*, 106 Wn. App. 876, 881, 26 P.3d 298 (2001), *review denied*, 145 Wn.2d 1016 (2002). But the rule applies only to inventory searches prior to booking, not to searches incident to arrest. *State v. Jordan*, 92 Wn. App. 25, 28, 960 P.2d 949 (1998), *review denied*, 137 Wn.2d 1006 (1999); *Ross*, 106 Wn. App. 876. Because Salinas' clothing was seized incident to arrest, RCW 10.31.030 does not apply.

## DOG TRACK EVIDENCE

¶29 Salinas contends the court erred by admitting evidence of the dog track that led to his arrest.

¶30 Dog tracking evidence is admissible in Washington where a proper foundation is made showing the qualifications of dog and handler. *State v. Loucks*, 98 Wn.2d 563, 566, 656 P.2d 480 (1983). This foundation was supplied by the testimony of the officers. The trial court entered findings of fact that are supported by substantial evidence. We find no error in the trial court's determination that the issues raised by the defense went to the weight and credibility of the evidence rather than its admissibility.

¶31 Dog tracking evidence must be supported by corroborating evidence; standing alone, it is insufficient for a criminal conviction. *Loucks*, 98 Wn.2d 563; *State v. Wagner*, 36 Wn. App. 286, 287, 673 P.2d 638 (1983). When requested, a cautionary instruction to this effect must be given. *Wagner*, 36 Wn. App. at 287-88. Salinas contends trial counsel was ineffective for not requesting a cautionary instruction.

¶32 To establish a claim of ineffective assistance of counsel, the defendant has the burden of proving both that trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In general, "where abundant evidence corroborates dog tracking evidence, failure to provide the instruction is of minor significance." *State v. Bockman*, 37 Wn. App. 474, 484, 682 P.2d 925, *review denied*, 102 Wn.2d 1002 (1984). That is the case here. DNA evidence linked Salinas to the victim. Salinas matched the description given by the victim. Salinas fled from the police when the dog tracked him to his sleeping bag. Salinas does not meet his burden to show a reasonable probability of a different outcome had a cautionary instruction been given.

## IDENTIFICATION BY VICTIM

¶33 The victim failed to identify Salinas in a photo montage the police presented to her shortly after the rape. Before trial, Salinas moved unsuccessfully to prevent the victim from identifying him in court. Salinas contends it was error to permit the in-court identification because it was so unreliable that it violated due process. Our review is for abuse of discretion. *State v. Kinard*, 109 Wn. App. 428, 432, 36 P.3d 573 (2001), *review denied*, 146 Wn.2d 1022 (2002).

¶34 Where the defendant does not claim that the police used impermissibly suggestive identification procedures, the due process clause does not condition the admissibility of identification testimony upon proof of its reliability. *State v. Vaughn*, 101 Wn.2d 604, 605, 682 P.2d 878 (1984). "The fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Perry v. New Hampshire*, ___ U.S. ___, 132 S. Ct. 716, 728, 181 L. Ed. 2d 694 (2012). Whether a witness's identification is reliable and what weight to give it are issues for the jury to resolve, considering any uncertainty or inconsistencies in the testimony. *State v. Kinard*, 39 Wn. App. 871, 874, 696 P.2d 603, *review denied*, 103 Wn.2d 1041 (1985). Because Salinas' challenge was based on reliability alone, the trial court properly denied the motion.

## SENTENCING ISSUES

¶35 Salinas was convicted of three counts of rape and one count of kidnapping. It became apparent at sentencing that Salinas could not be punished for the kidnapping conviction because it had merged into his first degree rape convictions. There was general agreement at sentencing, however, that the double jeopardy issue was moot in

view of Salinas' sentence to life without parole as a persistent offender. The parties now acknowledge that the judgment and sentence must be amended to show the kidnapping conviction as having been vacated. *In re Pers. Restraint of Strandy*, 171 Wn.2d 817, 819, 256 P.3d 1159 (2011); *State v. Womac*, 160 Wn.2d 643, 650-51, 160 P.3d 40 (2007). This shall be done on remand.

 ¶36 Salinas' sentencing memorandum asked the trial court to treat the three counts of rape as the same criminal conduct for sentencing purposes under RCW 9.94A.589. The trial court did not address this request. The State contends the issue is moot. Because Salinas has been sentenced to life without parole, the adjustment to his offender score that would result from a finding of same criminal conduct would not impact the length of his sentence. Salinas, however, argues that he is entitled to a finding on the issue because it would become relevant if his sentence as a persistent offender were to be reversed and resentencing became necessary.

¶37 Trial courts should make a finding on same criminal conduct at sentencing when requested to do so, even if the potential impact on the sentence depends on a reversal. Such issues are best decided when the underlying evidence is fresh in the court's mind. On remand, the court shall determine whether or not the three counts of rape involved the same criminal conduct under RCW 9.94A.589.

PERSISTENT OFFENDER SENTENCE

 ¶38 Salinas argues that his constitutional rights were violated when the trial court, and not a jury, found the existence of his prior two strikes for sentencing purposes under the Persistent Offender Accountability Act of the Sentencing Reform Act of 1981, chapter 9.94A RCW. Our Supreme Court has "repeatedly rejected" the argument that a jury must determine the existence of prior convictions. *State v. Thiefault*, 160 Wn.2d 409, 418, 158 P.3d 580 (2007).

Salinas also contends the legislature's failure to classify the persistent offender finding as an element, which would allow for a jury determination and require proof beyond a reasonable doubt, violates equal protection guarantees. We rejected this argument in *State v. Langstead*, 155 Wn. App. 448, 228 P.3d 799, *review denied*, 170 Wn.2d 1009 (2010). There, applying rational basis review, we held "recidivists whose conduct is inherently culpable enough to incur a felony sanction are, as a group, rationally distinguishable from persons whose conduct is felonious only if preceded by a prior conviction for the same or a similar offense." *Langstead*, 155 Wn. App. at 456-57. Following *Thiefault* and *Langstead*, we reject Salinas' constitutional challenges to the persistent offender statute.

¶39 Finally, Salinas contends the evidence presented at sentencing was insufficient to prove that he had two qualifying persistent offender convictions. Specifically, he argues the evidence was insufficient to prove he was the same person convicted of a prior first degree robbery conviction in Chelan County in 1994.

¶40 The applicable standard of proof for the trial court's finding of a prior conviction is by a preponderance of the evidence. *State v. Lewis*, 141 Wn. App. 367, 393, 166 P.3d 786 (2007), *review denied*, 163 Wn.2d 1030 (2008). In a challenge to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the State. *Lewis*, 141 Wn. App. at 393.

¶41 The State presented a judgment and sentence for the Chelan County robbery conviction. The caption names the defendant as "Hector Salinas AKA Antonio R. Juarez." The fingerprints on the judgment and sentence were of such poor quality that a crime investigator for the Bellingham Police Department could not say they matched Salinas. The State called the victim of the robbery as a witness. The witness testified about the robbery and identified Salinas as the person who robbed him and as the person shown in a booking photo in the robbery case.

Viewed in the light most favorable to the State, the evidence was sufficient to prove the prior conviction.

¶42 The conviction is affirmed. The persistent offender sentence is affirmed. The case is remanded for vacation of the kidnapping conviction and for the trial court to decide the issue of the same criminal conduct.

Cox and ELLINGTON, JJ., concur.

Review denied at 176 Wn.2d 1002 (2013).