COURT OF APPEALS DIV I
2014 MAR -3 AM 9: 18



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69101-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CHERYL RENEE LIDEL, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: <u>March 3, 2014</u> |
| | ) | |

Cox, J. – Expert testimony is admissible under ER 702 if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Because Cheryl Lidel made no showing that expert testimony on dissociative identity disorder (DID) would assist the trier of fact in assessing her proposed insanity and diminished capacity defenses, the trial court did not abuse its discretion or violate Lidel's right to present a defense by excluding the evidence as not helpful under ER 702. Lidel's challenge to the constitutionality of the Persistent Offender Accountability Act, RCW 9.94A.570, is also without merit. Accordingly, we affirm.

On the afternoon of February 14, 2010, Lidel entered a Seattle Subway Sandwich Shop and approached the counter. Myrtle Pederson, the sandwich artist, was working alone that afternoon. After initially indicating that she wanted to order a

sandwich, Lidel followed Pederson into an employee-only area and grabbed her in a chokehold. Lidel said she had a gun and threatened to shoot Pederson if she did not give her the money.

After Pederson gave her $370 from the cash register, Lidel left the shop. Pederson's boyfriend saw Lidel leave the store and called 911. The police arrested Lidel a short distance away and recovered $370 from her pocket.

The State charged Lidel with one count of second degree robbery. Prior to trial, Lidel gave notice that she intended to raise insanity and diminished capacity defenses. Psychiatrist Dr. Richard Adler examined Lidel and diagnosed her as suffering from DID, formerly known as multiple personality disorder.[1] Diagnostic criteria for DID include

> A. The presence of two or more distinct identities or personality states (each with its own relatively enduring pattern of perceiving, relating to, and thinking about the environment and self).
>
> B. At least two of these identities or personality states recurrently take control of the person's behavior.
>
> C. Inability to recall important personal information that is too extensive to be explained by ordinary forgetfulness.[2]

Dr. Adler determined that Lidel -- "Cheryl" – was the "host personality" and identified two alternate personalities (alters), "Debbie" and "Odessa." Dr. Adler believed "Odessa" was operative at the time of the robbery, but that the personality had reverted

---

[1] See State v. Greene, 139 Wn.2d 64, 68, 984 P.2d 1024 (1999).
[2] Id. (quoting American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th ed.1994)).

to Cheryl by the time of the arrest. Based on his examination, Dr. Adler determined that "it is reasonable to conclude that Ms. Lidel (herself) did not understand the nature of the illegal act and/or failed to understand its wrongfulness at the time."

The State disputed Dr. Adler's DID diagnosis and moved to exclude Lidel's proposed insanity and diminished capacity defenses. Relying primarily on the decision in State v. Greene,[3] the State argued that a diagnosis of DID is not currently capable of forensic application and therefore cannot assist the trier of fact in assessing the defendant's mental states. The trial court agreed and excluded Dr. Adler's proposed testimony as not helpful under ER 702.

The case proceeded to trial without Lidel's proposed defenses, and the jury found Lidel guilty as charged. Based on her criminal history, including prior convictions for first degree robbery with a deadly weapon, the trial court found that Lidel was a persistent offender under the Persistent Offender Accountability Act (POAA), RCW 9.94A.570, and imposed a mandatory life sentence.

### EXPERT TESTIMONY ON DISSOCIATIVE IDENTITY DISORDER

On appeal, Lidel contends that the trial court abused its discretion in excluding Dr. Adler's testimony on his DID diagnosis. She argues that the evidence was relevant and that its exclusion violated her constitutional right to present a defense.

In order to establish the defense of insanity, the defendant bears the burden of demonstrating by a preponderance of the evidence:

---

[3] 139 Wn.2d 64, 984 P.2d 1024 (1999).

(1) At the time of the commission of the offense, as a result of mental disease or defect, the mind of the actor was affected to such an extent that:

(a) He or she was unable to perceive the nature and quality of the act with which he or she is charged; or

(b) He or she was unable to tell right from wrong with reference to the particular act charged.[4]

To maintain a diminished capacity defense, the defendant bears the burden of producing evidence that "logically and reasonably connects the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged."[5]

Expert testimony is admissible under ER 702 "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Such testimony is generally helpful to the trier of fact when "it concerns matters beyond the common knowledge of the average layperson and does not mislead the jury."[6] We review the trial court's decision to admit testimony under ER 702 for an abuse of discretion.[7]

Our supreme court's decision in State v. Greene controls our analysis here. In Greene, a prosecution for indecent liberties and first degree kidnapping, the defendant pleaded not guilty by reason of insanity, based on a diagnosis of DID. The trial court ruled that the defense's proposed expert testimony on DID was not admissible to

---

[4] RCW 9A.12.010; see RCW 10.77.030.
[5] State v. Griffin, 100 Wn.2d 417, 419, 670 P.2d 265 (1983).
[6] State v. Thomas, 123 Wn. App. 771, 778, 98 P.3d 1258 (2004).
[7] State v. Roberts, 142 Wn.2d 471, 520, 14 P.3d 713 (2000).

establish the defenses of insanity or diminished capacity. The supreme court held that DID was generally accepted within the scientific community as a diagnosable psychiatric condition and therefore met the Frye[8] standard for admissibility. The court concluded, however, that the proposed expert testimony on DID would not be helpful to the jury and was therefore not admissible under ER 702.[9]

In reaching its decision, the court noted that the relevant question before the trier of fact was whether, at the time of the offenses, DID prevented Greene "from appreciating the nature, quality, or wrongfulness of his actions, or, in the alternative, ... demonstrably impaired Greene's ability to form the [necessary mental intent]."[10] But in order to assist the jury in making this determination, expert testimony, even if based on generally accepted scientific principles, must be capable "of forensic application" by reasonably relating "the defendant's alleged mental condition to the asserted inability to appreciate the nature of his or her actions or to form the required specific intent to commit the charged crime."[11]

More fundamentally, the forensic application of expert testimony presupposes the existence of "a legal standard for culpability in the context of DID."[12]

> That is, when a person suffering from DID is charged with a crime, the question becomes, "who is the proper defendant?" A determination of sanity in this context can be considered only subsequent to the determination of who (which alter personality) should be held responsible

---

[8] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).
[9] Greene, 139 Wn.2d at 73.
[10] Id. (citations omitted).
[11] Id. at 74.
[12] Id. at 77.

for the crime - the host, or possibly one or more of the alters. This, in turn, is related to the scientific possibility of identifying the controlling and/or knowledgeable alters at the time of the crime.[13]

The Greene court underscored the difficulty of developing the appropriate standard by noting the competing potential approaches:

The various approaches primarily differ on which personality (or personalities) any mental examination should focus. Thus, an approach may focus on the mental condition of the host personality at the time of the offense; or, conversely, on the mental condition of the alter in control at the time of the offense; or, possibly, on the mental condition of each and every alter personality at the time of the crime (under this approach, if any significant alter is not aware of or does not acquiesce in the commission of the crime, such innocent "personlike" entities do not deserve to suffer punishment).[14]

None of these approaches has gained acceptance as "reliably helping to resolve questions regarding sanity and/or mental capacity in a legal sense."[15] The court noted its earlier decision in State v. Wheaton,[16] in which it had concluded the record was insufficient to announce a rule "for determining how to assess the legal sanity or insanity of a defendant suffering from [multiple personality disorder],"[17] and acknowledged that "we find ourselves in no better position today than we did [when Wheaton was decided]."[18] Because there was then no consensus in the court or medical community

---

[13] Id. at 77-78.

[14] Id. at 77.

[15] Id.

[16] 121 Wn.2d 347, 850 P.2d 507 (1993) (declining to adopt a specific legal standard to assess the sanity of a criminal defendant suffering from multiple personality disorder).

[17] Id. at 357.

[18] Greene, 139 Wn.2d at 74.

as to the proper forensic method for this determination, the <u>Greene</u> court concluded that DID testimony was properly excluded under ER 702 as not helpful to the jury.[19]

Here, Dr. Adler diagnosed Lidel with DID, but he limited his opinion to "Cheryl," the primary personality. He believed that "Odessa," one of Lidel's two alters, was the personality in control during the crime, but that Lidel was in control by the time of the arrest. Dr. Adler was unable to explain how Lidel transitioned from one personality to another.

On appeal, Lidel does not challenge the court's analysis in <u>Greene</u>.[20] Nor has she suggested that the unsettled question in <u>Greene</u> of how to allocate legal liability among multiple personalities has since been resolved. Dr. Adler expressly acknowledged that he was unable to assist the jury in assessing the effect of his DID analysis in light of Lidel's multiple personalities at the time of the crime:

> The issue of DID dissociative states, who's responsible, the host, the alter, is the host responsible for what an alter does right – that's an issue even having read some of the law – it's for a juror or the trier of fact.[21]

In sum, Dr. Adler's testimony provided no basis for assessing the effect of his DID diagnosis on the legal concepts of insanity and diminished capacity. Consequently,

---

[19] <u>Id.</u> at 79.

[20] Greene later obtained relief in a federal habeas corpus petition. In affirming the order granting the writ, the Ninth Circuit concluded that Greene should have been able to present his own testimony and the testimony of the victim to establish his mental state at the time of the crime. The court expressly noted that it was not holding that Washington's ER 702 "is defective in any way." <u>Greene v. Lambert</u>, 288 F.3d 1081, 1093 (9th Cir. 2002).

[21] Exhibit 6, at 47-48.

the evidence was not helpful to the jury, and the trial court did not abuse its discretion in excluding it under ER 702.

## CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE

Lidel contends that the exclusion of Dr. Adler's testimony under ER 702 violated her Sixth Amendment right to present a defense. We disagree.

The defendant's Sixth Amendment right to present a meaningful defense is not unlimited and "must yield to 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'"[22] A defendant has no constitutional right to present irrelevant evidence.[23]

Under ER 702, expert testimony is helpful only if relevant.[24] "Scientific evidence that does not help the trier of fact resolve any issue of fact is irrelevant and does not meet the requirements of ER 702."[25] Under Greene, Dr. Adler's proposed testimony was neither relevant nor helpful to the jury and therefore properly excluded under ER 702.[26] Moreover, Lidel has not cited any authority suggesting that evidence properly excluded under ER 702 "infringes upon a weighty interest of the defendant and is arbitrary or disproportionate to the purpose it was designed to serve."[27]

---

[22] State v. Donald, ___ Wn. App. ___, 316 P.3d 1081, 1087 (2013), pet. for review filed, (quoting State v. Finch, 137 Wn.2d 792, 825, 975 P.2d 967 (1999)).

[23] State v. Hudlow, 99 Wn.2d 1, 15, 659 P.2d 514 (1983).

[24] Greene, 139 Wn.2d at 73.

[25] Id.

[26] See State v. Atsbeha, 142 Wn.2d 904, 918-19, 16 P.3d 626 (2001) (expert's diminished capacity testimony not relevant and not helpful to trier of fact because it did not relate to defendant's ability to form intent to deliver controlled substance).

[27] Donald, 316 P.3d at 1087 (citing Holmes v. South Carolina, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006)).

The exclusion of Dr. Adler's testimony did not violate Lidel's right to present a defense.

## CONSTITUTIONALITY OF THE PERSISTENT OFFENDER ACCOUNTABILITY ACT

Lidel contends that the POAA's classification of her prior convictions as sentencing factors rather than additional elements of the crime violates her constitutional right to equal protection. She maintains there is no rational basis for requiring the State to prove prior convictions to a jury when they are an element of the crime, but allow judges to find some prior convictions by a preponderance of the evidence as "sentencing factors."

This court rejected an identical argument in State v. Langstead:

We conclude recidivists whose conduct is inherently culpable enough to incur a felony sanction are, as a group, rationally distinguishable from persons whose conduct is felonious only if preceded by a prior conviction for the same or a similar offense. We reject Langstead's equal protection challenge.[28]

Lidel has not addressed or even cited Langstead.

Lidel also contends that the State was required to prove the existence of her two prior qualifying convictions to a jury before sentencing her as a persistent offender. Our supreme court has repeatedly held that the State need not prove prior convictions to the jury.[29]

---

[28] 155 Wn. App. 448, 456-57, 228 P.3d 799, review denied, 170 Wn.2d 1009 (2010); accord, State v. Salinas, 169 Wn. App. 210, 226, 279 P.3d 917 (2012), review denied, 176 Wn.2d 1002 (2013).

[29] See State v. Thiefault, 160 Wn.2d 409, 418, 158 P.3d 580 (2007); see also, Langstead, 155 Wn. App. at 453; Salinas, 160 Wn.2d at 225.

We reject Lidel's constitutional challenges to the persistent offender statute.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR: