IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 77877-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CALEB PERKINS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: April 29, 2019 |

HAZELRIGG-HERNANDEZ, J. — Caleb Perkins seeks reversal, arguing that the State presented insufficient evidence that he intentionally resisted arrest rather than mere detention and that the court erred in refusing his proposed jury instruction distinguishing the two concepts. The State presented sufficient evidence for a rational trier of fact to find that a reasonable person in Perkins' position would have thought he was under arrest. Considered as a whole, the given jury instructions adequately informed the jury of the applicable law and permitted Perkins to argue his theory of the case. We affirm.

## FACTS

In the early morning of June 16, 2016, Officer Scott Bruton noticed a Nissan Altima parked in a grocery store parking lot with the engine running. Officer Bruton could see Caleb Perkins sitting in the driver's seat of the car with the seat fully reclined. Officer Bruton ran the license plate and discovered that the Altima was listed as a stolen vehicle. He then called the dispatch center on the radio and

relayed the license plate number to confirm that the vehicle was stolen. Officer Bruton called for backup, positioned his car behind the stolen vehicle, and turned on his flashing lights.

When he turned the lights on, he saw Perkins quickly sit up and look back. Perkins made a "back up" motion to the officer with his hands and the Altima began reversing toward the police car. Officer Bruton got out of the police car and yelled to Perkins, "This is the police, you're being de[ ]tained, you're a suspect in a stolen car, put your hands out the window, show me your hands." The front driver's side window of the Altima was open. Perkins put his hands on the windowsill for a moment, then reached into the glove box, retrieved a cigarette, lit the cigarette, and "[s]eemed to be fidgeting a lot."

After a second officer, Corporal Jason Weiss, arrived, the two walked up to the open window and ordered Perkins to get out of the car. Perkins responded that the officers didn't have the right to do that. Officer Bruton then opened the car door and grabbed on to Perkins' left arm, again ordering him out of the car. Perkins pulled away, cursing at the officers and telling them he was not going to get out of the car. Officer Bruton then used a "tie clench" maneuver, reaching around and grabbing Perkins by the head to pull him out of the Altima. Perkins and Officer Bruton landed face down on the ground and Perkins' hands were underneath his chest.

Officer Bruton yelled at Perkins to put his hands behind his back and reached for his arms to try to place them behind his back. Perkins did not allow Officer Bruton to pull his hands out from underneath him. Corporal Weiss tried to

get Perkins' hands onto his back and was unable to do so. Corporal Weiss testified that he told Perkins twice, "If you don't get your hands out from underneath you, I'm going to taze you." Officer Bruton could not remember whether Corporal Weiss had given this warning but remembered that he said, "Taser, Taser, Taser," and then applied his Taser to Perkins. The Taser incapacitated Perkins and Officer Bruton was able to pull Perkins' hands out from under his body and handcuff him.

Officer Bruton helped Perkins to his feet and the officers searched him. Perkins was yelling at the officers and pulling away as they were trying to search him. Perkins complained that there was a dart from the Taser still connected to him and Officer Bruton pulled it out. The officers called Eastside Fire and Rescue to provide medical attention to Perkins, but when one of the firefighters approached Perkins, he called him a name and refused treatment.

Officer Bruton placed Perkins under arrest and testified that he felt he had probable cause because Perkins was in a stolen vehicle. Officer Bruton read Perkins his Miranda[1] warnings after placing him in his police car. Perkins responded that he understood and would answer questions. Officer Bruton asked him where he had gotten the Altima and Perkins responded that it had been given to him by a guy who was going to jail, but he did not know the man's name. He said he had been driving the vehicle for two days. During the interview, Perkins continued to curse at the officers and spat at Officer Bruton.

When Officer Bruton removed the key from the ignition of the Altima, he noticed that the key was labeled "GM" rather than "Nissan." He also noticed that

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

it was a "shaved key," which is a key that has been scraped or ground down so that it can fit into multiple ignitions. Officer Bruton testified that, based on his training and experience, a shaved key is something commonly seen in stolen motor vehicles.

Officer Bruton and Corporal Weiss testified to the preceding facts at trial. After the close of the State's case-in-chief, Perkins moved to dismiss the charge of resisting arrest. Perkins argued that the state had not proven that he was arrested, as opposed to simply detained, until he was placed in the police car. The State responded that Officer Bruton had testified that he had arrested Perkins and that he had probable cause to do so. The court noted that it had to view the evidence in the light most favorable to the non-moving party. The court found it "very clear" that Officer Bruton had the intent to arrest Perkins and noted that the events took place within a short period of time. The court denied the motion to dismiss the charge.

Perkins proposed the following jury instruction differentiating between detention and arrest with citations to supporting authority:

> A law enforcement officer's detention of a suspect does not necessarily amount to an arrest. A person may be "detained" by law enforcement, but not be "under arrest." The existence of probable cause does not necessarily elevate a detention to an arrest.
>
> State v. O'Neill, 148 Wn.2d 564, 62 P.3d 489 (2003) (no valid arrest had occurred, despite probable cause to justify one, to support search incident to arrest); State v. Kennedy, 107 Wn.2d 1, 726 P.2d 445 (1986) (discussing the general distinction between Terry stops and formal arrests); State v. Lesnick, 84 Wn.2d 940, 943, 530 P.2d 243 (1975) ("Terry confirms that something short of placing a person under arrest may constitute a seizure within the meaning of the Fourth amendment.").

- 4 -

The court found that the instruction would be a comment on the evidence and declined to give the instruction. Perkins took exception to this, arguing that the proposed instruction was an accurate statement of the law distinguishing between a detention and an arrest and served to further his theory of the case.

Perkins argued this theory in closing as follows:

> So when Officer Bruton testified, if you recall or if you look back at your notes, I think you'll see this word detention, detention, detention over and over again. I told Mr. Perkins he was being detained. He was under detention. He was under detention. The first time he uses the word "arrest" is after the tazing, after he's placed in the back of the patrol car.
> And you might sit here and maybe internally you're rolling your eyes at me a little bit and saying: This is just lawyer talk. But these distinctions are very important, because it's the State's burden to prove that not only was there a detention, but there was an arrest. Because they're not necessarily the same thing. Mr. Perkins can be detained in an investigation about the car, but that doesn't necessarily amount to an arrest. And what you didn't hear was Officer Bruton saying: Put your hands out of the car, you're under arrest. Or: Put your hands behind your back, you're under arrest.
> So they haven't proven that there was actually an arrest. And once you—the other leap from that is that how can he act intentionally in resisting arrest, how can he intend to resist something that he didn't know was actually happening? So if the officers are thinking in their head that he's under arrest but not saying that, how can he resist something that he isn't aware of?
> Every act that the officers testified to that amounted to resisting arrest happened before he was placed under arrest and placed in the back of the patrol car. The arrest happened between the tazing and being put in a patrol car. That's when he was Mirandized. Everything else happened before then. So for those reasons, the State hasn't proven that Mr. Perkins resisted a lawful arrest.

The jury found Perkins guilty as charged. Perkins was sentenced to 90 days in jail on each count to run concurrently with credit for time served.

DISCUSSION

I.   Sufficiency of Evidence

Perkins contends that the State presented insufficient evidence to support his conviction for resisting arrest. Specifically, Perkins argues that the State presented insufficient evidence that he intentionally resisted arrest rather than mere detention.

Due process requires that the State prove each element of a charged offense beyond a reasonable doubt. State v. Chacon, 192 Wn.2d 545, 549, 431 P.3d 477 (2018) (citing U.S. Const. amend. XIV; Jackson v. Virginia, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Elmi, 166 Wn.2d 209, 214, 207 P.3d 439 (2009). "We draw all reasonable inferences from the evidence in favor of the State." Id.

Perkins was charged with resisting arrest in violation of RCW 9A.76.040, which provides that "[a] person is guilty of resisting arrest if he or she intentionally prevents or attempts to prevent a peace officer from lawfully arresting him or her." RCW 9A.76.040. A police officer has the authority to arrest a person without a warrant if the officer has probable cause to believe that a person has committed or is committing a felony. RCW 10.31.100. Possession of a stolen vehicle is a class B felony. RCW 9A.56.068.

Title 9A RCW does not define the term "arrest." See RCW 9A.04.110, RCW 9A.76.010. Washington courts have interpreted the term in the context of search and seizure, noting that "as a general rule[,] a person is placed under arrest when he is deprived of his liberty by an officer who intends to arrest him. It is not always necessary for an officer to make a formal declaration of arrest." State v. Sullivan, 65 Wn.2d 47, 51, 395 P.2d 745 (1964). In State v. O'Neill, the Supreme Court recognized the distinction between detention and arrest in holding that O'Neill was detained when the officer asked him to step out of his vehicle but a lawful custodial arrest that would justify a warrantless search incident to arrest had not occurred. 148 Wn.2d 564, 570–71, 62 P.3d 489 (2003).

"An arrest takes place when a duly authorized officer of the law manifests an intent to take a person into custody and actually seizes or detains such person. The existence of an arrest depends in each case upon an objective evaluation of all the surrounding circumstances." State v. Patton, 167 Wn.2d 379, 387, 219 P.3d 651 (2009) (citing 12 Royce A. Ferguson, Jr., Washington Practice: Criminal Practice and Procedure § 3104, (3d ed. 2004)). To determine whether a person is in custody, we must assess whether a reasonable person in the suspect's position at the time would have thought he was under arrest. State v. Salinas, 169 Wn. App. 210, 218, 279 P.3d 917 (2012) (citing State v. Rivard, 131 Wn.2d 63, 75, 929 P.2d 413 (1997)). This is an objective assessment hinging on the manifestation of the arresting officer's intent rather than any subjective intent. Id. (citing State v. Radka, 120 Wn. App. 43, 49, 83 P.3d 1038 (2004)). "Whether an

officer informs the defendant he is under arrest is only one of all of the surrounding circumstances, albeit an important one." Patton, 167 Wn.2d at 387 n.6.

A number of recent cases provide guidance on circumstances indicating an arrest. In Patton, an officer was watching the defendant's trailer in hope of arresting him on an outstanding warrant when he saw him in a car in the driveway. Id. at 384. The officer called for backup and pulled into the driveway behind the car with his flashing lights on to keep the defendant from driving away. Id. The officer then approached Patton, told him he was under arrest, and ordered him to put his hands behind his back. Id. Although Patton fled into the trailer and was not physically restrained until later, the Supreme Court found that an arrest had occurred before he fled. Id. at 387.

In Salinas, the officers identified themselves to the defendant as police and ordered him to show his hands. 169 Wn. App at 218. When Salinas fled, the officers chased him, ordered him to lie on the ground, and allowed a police dog to bite Salinas in order to make him comply with that order. Id. at 218-19. He was then handcuffed on the ground. Id. at 219. This court found that, although the officers had not explicitly informed Salinas that he was under arrest, "[a] reasonable person in this situation would have thought he was being arrested and taken into custody, not merely being detained for a brief investigation." Id.

Finally, in State v. Calvin, the defendant argued that he was not resisting arrest because he did not know that he was under arrest and did not know that the park ranger was a law enforcement official. 176 Wn. App. 1, 12, 316 P.3d 496 (2013). This court found that a rational trier of fact could have determined that

Calvin knew the ranger was a law enforcement officer and that, when the ranger "identified himself as 'police,' told Calvin to get on the ground, and started to place handcuffs on him, Calvin knew he was under arrest." Id. at 13. Accordingly, when the ranger took Calvin to the ground and handcuffed his left wrist but Calvin struggled and refused to yield his right arm for approximately a minute, he was attempting to prevent his arrest. Id. at 8–9, 14.

Here, viewed in the light most favorable to the State, the evidence is sufficient for a rational trier of fact to find that Perkins was being arrested rather than detained. Like Patton, Officer Bruton pulled his car behind Perkins, activated his flashing lights, and ordered him to keep his hands visible. Although Perkins was not explicitly informed that he was under arrest, Officer Bruton told him that he was being detained because he was in a stolen vehicle. Like Salinas, Officer Bruton identified himself as police and ordered Perkins to show his hands. Although Officer Bruton used the word "detained" instead of "arrested" when telling Perkins to stop the car, a rational trier of fact could find that a reasonable person in Perkins' position would have thought he was under arrest.

II.    Jury Instruction

Perkins contends that the court erred in failing to give his proposed jury instruction distinguishing detention and arrest because the court erroneously concluded that this instruction would be an impermissible comment on the evidence.

When a trial court refuses to give a requested jury instruction based on a ruling of law, we review the denial de novo. State v. Brightman, 155 Wn.2d 506,

519, 122 P.3d 150 (2005). The court gives jury instructions to guide the jury in its deliberations and aid it in arriving at the proper verdict. State v. Allen, 89 Wn.2d 651, 654, 574 P.2d 1182 (1978). Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and properly inform the jury of the applicable law when read as a whole. State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d 550 (2002) (citing State v. Riley, 137 Wn.2d 904, 908 n.1, 909, 976 P.2d 624 (1999)). A defendant is entitled to an instruction on his theory of the case if the evidence supports the instruction. State v. Werner, 170 Wn.2d 333, 336, 241 P.3d 410 (2010) (citing State v. Ager, 128 Wn.2d 85, 93, 904 P.2d 715 (1995)). However, "[t]he court need not give amplified instructions, if the instructions given are broad enough to permit argument." State v. Elder, 70 Wn.2d 414, 419, 423 P.2d 533 (1967).

Judges are not permitted to comment on or convey their personal attitudes about the merits of a case. State v. Foster, 91 Wn.2d 466, 481, 589 P.2d 789 (1979); Const. art. IV, § 16. "In determining whether words or actions amount to a comment on the evidence, we look to the facts and circumstances of the case." State v. Jacobsen, 78 Wn.2d 491, 495, 477 P.2d 1 (1970). The judge's personal opinion about the evidence may not be conveyed to the jury directly or by implication. Id. An instruction which is simply an accurate statement of the law pertaining to an issue does not constitute an improper comment on the evidence. State v. Woods, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001), overruled on other grounds by State v. Schierman, 192 Wn.2d 577, 415 P.3d 106 (2018).

As discussed above, the proposed instruction appears to be an accurate statement of the law and therefore did not constitute an improper comment on the evidence. However, the court did not err in declining to give this instruction. Considered as a whole, the given instructions adequately informed the jury of the applicable law and permitted Perkins to argue his theory of the case. Indeed, Perkins argued the key factual issue of whether he was being detained or arrested extensively during his closing argument. Additionally, had the proposed instruction been given without any additional information on what constituted an arrest, the instructions would have been confusing to the jury and would not have furthered the purpose of guiding the jury in its deliberations.

We affirm.

WE CONCUR:

_____
Andrus, J.

_____

_____