

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JAN 0 4 2018

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Jan 4, 2018

Susan L. Carlson, Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 91905-4 |
| HECTOR SERANO SALINAS, | ) ) | En Banc |
| Respondent. | ) ) ) | Filed JAN 0 4 2018 |

MADSEN, J.—This case addresses the availability and application of the invited error doctrine on Hector Serano Salinas's personal restraint petition (PRP), which asserts for the first time on collateral review that his public trial right was violated by private questioning of some potential jurors in chambers and that his appellate counsel was ineffective for failing to raise the public trial right violation on direct review. Based on the particular circumstances of this case, we hold that Salinas invited the courtroom closure error that he now asserts and is precluded from raising that error. Further, consistent with the Supreme Court's recent decision in *Weaver v. Massachusetts*, ___ U.S. ___, 137 S. Ct. 1899, 198 L. Ed. 2d 420 (2017), we hold that Salinas's assertion of ineffective assistance of appellate counsel fails because he has not met his burden of showing that he was prejudiced by the courtroom closure error.[1]

## FACTS

In 2010, a jury convicted Salinas of three counts of first degree rape and one count of first degree kidnapping concerning his assault on a homeless woman at a Bellingham

---

[1] *Weaver* recognized that closing the courtroom constitutes structural error, but noted different categories of structural error, some requiring reversal and others not, as discussed *infra*.

park. *See State v. Salinas*, 169 Wn. App. 210, 214, 279 P.3d 917 (2012), *review denied*, 176 Wn.2d 1002 (2013). He was sentenced as a persistent offender to life without the possibility of release. *Id.* at 216; Resp. to PRP, App. A.[2] Salinas's direct appeal raised numerous substantive issues challenging his conviction and sentence. *See Salinas*, 169 Wn. App. at 216-27. Division One of the Court of Appeals affirmed his conviction and persistent offender sentence, but remanded for vacation of the kidnapping conviction and for a determination regarding whether the rapes constituted the same criminal conduct.[3] *Id.* at 227.

Within a year of the resolution of his appeal, Salinas filed the current PRP alleging a violation of his public trial right during jury selection and that his appellate counsel was ineffective for failing to raise the issue on direct review. The relevant facts concerning jury voir dire are as follows.

More than a month before trial, Salinas's defense counsel filed a proposed jury questionnaire and instruction that informed prospective jurors:

> Some of these questions may call for information of a personal nature that you may not want to discuss in public. If you feel that your answer to any question may invade your right to privacy or might be embarrassing to you, you may so indicate on the form that you would prefer to discuss your answer in private. You will find instructions for this on the questionnaire.

---

[2] Further references to appendices are to documents appended to the State's response to Salinas's PRP.

[3] After remand from the direct appeal, Salinas filed another appeal challenging the recalculation of his offender score based on his amended judgment and sentence for three counts of first degree rape, but Division One affirmed in an unpublished decision. *See State v. Salinas*, No. 70125-8-I, slip op. (Wash. Ct. App. July 21, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/701258.pdf.

App. B at 2. Question 26 then asked whether the juror would prefer to discuss the answer to any of the questions *"privately rather than in open court,"* and asked the juror to identify the questions by number. *Id.* at 7 (emphasis added). Several of the questions asked about jurors' experience with sexual abuse or misconduct.

Defense counsel filed two more proposed juror questionnaires before the trial date. All three questionnaires provided the same advisement to jurors noted above, asked similar questions about sexual abuse or misconduct, and asked whether the jurors would prefer to discuss their answers to some questions "privately rather than in open court." *Id.*; App. C at 7; App. D at 7. The prosecutor did not file a proposed juror questionnaire, did not agree with some of the questions in the defense questionnaire, and did not request private voir dire.

On March 8, 2010, the trial court's questionnaire given to the jurors was filed in open court. The questionnaire included several of the same questions defense counsel had proposed regarding experience with sexual abuse or misconduct, and similarly advised:

> [I]f your answer to any of the following questions is of such a "sensitive nature" that you would like to discuss it "privately", please identify those questions by number here: _____

App. E at 2 (formatting omitted).

During pretrial motions that same day, the trial court noted that seven of the prospective jurors had indicated on their questionnaires that they wanted to speak in private. The judge suggested that the jurors be sworn in and that the jurors who wanted

to speak individually could be dealt with first, before the rest of voir dire. At the end of

pretrial motions the next day, defense counsel suggested:

> I have a suggestion to help the jury here. I don't know if the Court is
> willing to do this is [sic] that we take a break now and bring the jury up
> here, get them sworn, and let the ones go that don't want to talk in private.

Verbatim Report of Proceedings (VRP) (Mar. 9, 2010, Pretrial CR 3.5 Hr'g & Pretrial

Mots.) at 69-70. The judge indicated that was what he had in mind: to swear the jury in

and go through the basic qualifications. The prosecutor stated, "[W]hen you're talking

about taking them in privately"—to which the judge responded, "I'm going to ask if

there's anybody in the courtroom who has an objection, otherwise we have to do it in

open courtroom." *Id.* at 70.

Later that day, after inquiring whether all the prospective jurors had filled out the

questionnaire, the judge informed the venire:

> As you can see by that [questionaire], this is a case that might
> involve some matters which might be of a sensitive nature. In this case,
> I'm going to offer an opportunity to those who have indicated that they
> wish to speak in private about some issues the chance to do that. That is
> the first thing we will undertake, and then we will go through the general
> process of picking a jury which will start this afternoon.

VRP (Mar. 9, 2010, Jury Voir Dire) at 3. After addressing some other matters, the judge

returned to the issue of voir dire, noted that some potential jurors had requested to speak

in private, and inquired:

> Is there anyone in this group or *anyone* in this courtroom at this time *who
> has any* objection whatsoever to the Court conducting a short interview
> with each of those jurors, potential jurors with counsel and the defendant *in
> my chambers* all on the record to determine what their concerns are and be

4

able to have them answer those questions or tell them what their concerns are *in private?* Is there anyone here that has any objection to that?

*Id.* at 13 (emphasis added). The court then directed the jurors who wished to speak privately to return at 1:30 p.m. and the remainder to return at 2:30 p.m. *Id.* at 12-13, 23. After the recess, the court inquired again:

> I would ask if anyone has an objection to us speaking to them *in private* with us and counsel and defendant and the court reporter? Then I will go into chambers. Counsel will come in. The attorneys will come with me. The court reporter will set up, and Ms. Ortner will bring you in one at a time.

*Id.* at 23. The record indicates that when the trial court twice called for objections to the limited in-chambers questioning, no one objected. App. G at 2.

During in chambers voir dire, jurors discussed their own and their families' criminal histories and experiences with sexual abuse. As a result of the individual voir dire, three of the jurors were excused for cause.

As noted, following Salinas's conviction and resolution of his direct appeal, he filed the present PRP asserting that the in-camera questioning of some potential jurors violated his public trial right. The PRP contended that the trial court's failure to conduct a *Bone-Club*[4] analysis before conducting in-chambers voir dire requires reversal of his conviction and that he was denied effective assistance of appellate counsel when his appointed attorney failed to raise the public trial issue in his direct appeal. Division One agreed, reversing his conviction in an unpublished decision. *In re Pers. Restraint of Salinas*, No. 71383-3-I, slip op. (Wash. Ct. App. June 15, 2015),

---

[4] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

http://www.courts.wa.gov/opinions/pdf/713833.pdf. The State moved for discretionary review, contending that Salinas was foreclosed from raising the voir dire public trial right violation because he had invited the error. This court granted review. 185 Wn.2d 1024, 369 P.3d 501 (2016).

## ANALYSIS

### Invited Error

A criminal defendant has a right to a public trial as guaranteed by our state and federal constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22 (providing "the accused shall have the right . . . to have a speedy public trial"); *State v. Paumier*, 176 Wn.2d 29, 34, 288 P.3d 1126 (2012). We have repeatedly held that the public trial right applies to jury selection. The public trial right extends to voir dire proceedings and the questioning of individual prospective jurors. *State v. Wise*, 176 Wn.2d 1, 16-19, 288 P.3d 1113 (2012). The right to a public trial is not absolute, however, and this court has established that a trial court may close the courtroom so long as it considers the five criteria outlined in *Bone-Club*.[5] Failure to conduct a *Bone-Club* analysis before closing the proceeding is error generally requiring a new trial. *Paumier*, 176 Wn.2d at 35.

This court has applied a different rule, however, in the present context of collateral review in which a public trial violation is asserted for the first time. This court has

---

[5] The five factors are (1) the proponent of closure must make a showing of compelling need, (2) any person present when the motion is made must be given an opportunity to object, (3) the means of curtailing open access must be the least restrictive means available for protecting the threatened interests, (4) the court must weigh the competing interests of the public and of the closure, and (5) the order must be no broader in application or duration than necessary. *Bone-Club*, 128 Wn.2d at 258-59.

6

recently held that the usual presumption of prejudice applicable to courtroom closure claims raised on direct appeal does not apply in the PRP context. *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 120, 340 P.3d 810 (2014).[6]

In *Coggin*, in a lead and a concurring opinion, five justices of this court denied the petitioner's PRP, holding in part that it is petitioner's burden on collateral review to show that a public trial right violation was prejudicial. *Id.* at 122, 123 (Madsen, C.J., concurring). Because the petitioner relied only on the presumption of prejudice that is available in a direct appeal, he had failed to meet his burden on collateral review and his PRP was dismissed. *Id.* at 122, 123 (Madsen, C.J., concurring).

In *Coggin*, five justices also agreed that the invited error doctrine is applicable to a petitioner's assertion of a public trial right violation. In the lead opinion's view, however, the facts were not sufficient to establish that the error was invited. The *Coggin* lead opinion (four votes) reiterated that "'[t]he basic premise of the invited error doctrine is that a party who sets up an error at trial cannot claim that very action as error on appeal and receive a new trial.'" *Id.* at 119 (quoting *State v. Momah*, 167 Wn.2d 140, 153, 217 P.3d 321 (2009)).[7] The lead opinion stated, "In determining whether the invited error doctrine applies, we have considered whether the defendant affirmatively assented to the error, *materially contributed to it*, or benefited from it." *Id.* (emphasis added). Similarly, the concurrence (one vote) noted that "a party is precluded from raising a public trial

---

[6] *Coggin* was decided after Salinas filed his PRP.
[7] *See also State v. Henderson*, 114 Wn.2d 867, 871, 792 P.2d 514 (1990) (even where constitutional issues and constitutional rights are involved, invited error precludes appellate review).

right challenge . . . where the party invited the error or waived his or her public trial rights." *Id.* at 124 (Madsen, C.J., concurring). The concurrence opined that in assessing invited error, the court looks to the "totality of the circumstances," considering "whether the party engaged in *affirmative and voluntary action to induce or contribute to the error* and whether he or she benefited from the trial court's action." *Id.* (emphasis added).

The relevant facts in *Coggin* are as follows. Coggin's charges, which included first degree burglary, rape, robbery, and unlawful possession of a firearm, concerned the home invasion and assault of two young sisters. During jury selection, defense counsel expressed a desire for individual juror questioning because of the publicity and sensitive nature of the case. The prosecutor drafted a juror questionnaire, and defense counsel approved the final version. The questionnaire advised the potential jurors that if they preferred to discuss their answers in private, the court would provide an opportunity to do so in a closed hearing. The court and the parties questioned 12 prospective jurors in chambers, and 6 prospective jurors were dismissed for cause. The court did not engage in a *Bone-Club* analysis before the private questioning of the jurors, nor did the defense voice any objection to the procedure. Following conviction and resolution of his appeal, Coggin filed a PRP asserting that his right to a public trial was violated by the private questioning of some potential jurors. *See Coggin,* 182 Wn.2d at 117, 125 (Madsen, C.J., concurring).

In *Coggin,* the lead and concurring opinions disagreed as to whether the evidence established invited error. To the concurrence, defense counsel's advocating for private

questioning, approval of the State's juror questionnaire that promised private questioning, and active participation in the ensuing private questioning was sufficient to bar the petitioner's public trial right claim as invited error. The lead opinion disagreed, opining that "Coggin's actions do not rise to the level of invited error" because he *"merely assent[ed] to the State's juror questionnaire* and . . . it was the trial judge who decided to question jurors in chambers." *Id.* at 119 (emphasis added). In other words, in the lead opinion's view, Coggin's mere joining the State's questionnaire was not a sufficient material contribution to the public trial right error.[8] *See id.*

In the present case, the omission that troubled the *Coggin* lead opinion is not present. Here, defense counsel played the initiating and sustaining role that led to private questioning of jurors. Three times before trial, defense counsel submitted proposed juror questionnaires that invited jurors to identify which questions they would "prefer to discuss the answer[s] to . . . privately rather than in open court." App. B at 7; App. C at 7; App. D at 7 (question 26). The State "did not request that jurors be questioned in private." App. F at 2. Accordingly, defense counsel's early and repeated advocacy for private questioning was the impetus behind the court's questionnaire that similarly directed jurors: "If any of the questions asked here are of such a 'sensitive' nature that you would like to discuss it privately, please indicate the number of the question(s) here: _____." App. E at 4 (question 13). Under these facts, Salinas cannot now be heard to

---

[8] The dissent in *Coggin* did not address invited error except to say, "We should protect the public trial right by acknowledging that an *uninvited,* unwaived violation of this important right is always inherently prejudicial." *Coggin,* 182 Wn.2d at 126 (Stephens, J., dissenting) (emphasis added).

complain that the very procedure he proposed was employed by the trial court. "The [invited error] doctrine applies when a party takes affirmative and voluntary action that induces the trial court to take the action that that party later challenges on appeal." 15A KARL B. TEGLAND & DOUGLAS J. ENDE, WASHINGTON PRACTICE: WASHINGTON HANDBOOK ON CIVIL PROCEDURE § 88.4, at 758 (2015 ed.); *see also In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 723-24, 10 P.3d 380 (2000) (doctrine of invited error prohibits a party from knowingly setting up an error by an affirmative act and then complaining on appeal); *Smith v. Whatcom County Dist. Court*, 147 Wn.2d 98, 113, 51 P.3d 790 (2002) (same).

Given defense counsel's role in initiating the request for private questioning, defense counsel's advocacy for private questioning (including repeated submission of proposed juror questionnaires that provided for such questioning), defense counsel's active participation in the private questioning, defendant's benefiting from such questioning, and defense counsel's failure to object to such proceeding, under these facts defense counsel not only "materially contributed" to the private questioning but also took "affirmative and voluntary action to induce" such private questioning. *Coggin*, 182 Wn.2d at 119, 124.[9] We hold that under these facts, petitioner may not now assert a

---

[9] *See also Ames v. Ames*, 184 Wn. App. 826, 849, 340 P.3d 232 (2014) (a party who "first suggested the procedure" that the court employed and who "participated in this procedure" is estopped from subsequently objecting to the procedure because "[u]nder the doctrine of invited error, a party may not materially contribute to an erroneous application of law at trial and then complain of it on appeal"). Further, while the trial judge will always make the ultimate decision on whether to adopt a party's proposal, the salient point here is that the proposal to close the courtroom originated with and was pushed by defense counsel. The significance of defense counsel's multiple proposed juror questionnaires is that they demonstrated the defense's repeated

public trial error concerning the private questioning of jurors because he invited such error.

Salinas contends that "[i]t is difficult to fathom any material difference between *Coggin* and Salinas's case." Suppl. Br. of Resp't at 15. As discussed above, there are key differences. In *Coggin*, the State took the lead in designing the courtroom closure. Here, defense counsel supplied that role. As the *Coggin* lead opinion observed, "During jury selection, defense counsel expressed a desire for individual juror questioning due to the publicity and sensitive nature of the case. The prosecutor drafted a juror questionnaire, and defense counsel approved the final version." 182 Wn.2d at 117. The *Coggin* lead opinion determined: "The State provided the juror questionnaire that offered potential jurors a 'closed hearing,' and while Coggin approved of the questionnaire, he did not actively participate in designing the trial closure." *Id.* at 118. By contrast, Salinas's counsel's repeated submissions of proposed questionnaires advocating for private questioning of jurors demonstrates the defense's impetus and advocacy for a closed proceeding and the leading role the defense played in fomenting such closure, particularly where the State did not request that jurors be questioned in private. Unlike *Coggin*, the defense here actively participated in designing the trial closure.

Ineffective Assistance of Appellate Counsel

Invited error, as discussed above, also impacts Salinas's claim of ineffective assistance of appellate counsel. Salinas's PRP relies on *In re Personal Restraint of*

---

and sustained advocacy for a closed proceeding, and that such advocacy began more than a month before voir dire.

*Morris*, 176 Wn.2d 157, 288 P.3d 1140 (2012) (plurality opinion), as does Division One, in reversing Salinas's convictions. "To establish ineffective assistance of appellate counsel, a petitioner must establish that (1) counsel's performance was deficient and (2) the deficient performance actually prejudiced the defendant." *Salinas*, No. 71383-3-I, slip op. at 3 (citing *Morris*, 176 Wn.2d at 166 (citing *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 814, 100 P.3d 291 (2004))). "'[W]here appellate counsel fails to raise a public trial right claim, *where prejudice would have been presumed on direct review*, a petitioner is entitled to relief on collateral review.'" *Id.* (emphasis added) (alteration in original) (quoting *Morris*, 176 Wn.2d at 161 ("reaffirm[ing] *Orange*")).

*Morris* held that the case before the court was "no different from the situation in *Orange* where the appellate counsel failed to raise the public trial right issue." 176 Wn.2d at 167. *Morris* noted that, like *Orange*, the failure to raise the courtroom closure issue was "not the product of 'strategic' or 'tactical' thinking," and it deprived the petitioner of the opportunity to have the constitutional error deemed per se prejudicial on direct appeal. *Id.* at 167-68. However, in both *Morris* and *Orange*, the trial court acted sua sponte in ordering closure. *See id.* at 162 (court moved voir dire into chambers, but neither the State nor defense counsel moved for private voir dire); *see also State v. Easterling*, 157 Wn.2d 167, 177, 137 P.3d 825 (2006) (noting that in *Orange*, the trial court ordered closure sua sponte, and that in *Bone-Club*, the party requesting closure was the State). Thus, *Morris* and *Orange* are not like the present case, in which the impetus for closure originated with the petitioner. As discussed above, the presence of invited

12

error makes Salinas's case different. *See State v. Henderson*, 114 Wn.2d 867, 871, 792 P.2d 514 (1990) (invited error precludes judicial review even where the alleged error raises constitutional issues).

"To prevail on a claim of ineffective assistance of appellate counsel, [petitioner] must demonstrate the merit of any legal issue appellate counsel . . . failed to raise and also show [ ]he was prejudiced." *In re Pers. Restraint of Netherton*, 177 Wn.2d 798, 801, 306 P.3d 918 (2013) (citing *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 314, 868 P.2d 835, *cert. denied*, 513 U.S. 849 (1994)). Here, in light of the invited error, Salinas cannot demonstrate that his conviction would have been reversed if appellate counsel had raised the public trial right violation. Thus, he cannot demonstrate prejudice from appellate counsel's failure to raise the right to public trial violation that he alleges.

Notably, the "structural error" and resulting presumed prejudice, on which both of Salinas's PRP claims rely, has been clarified in the Supreme Court's recent decision in *Weaver v. Massachusetts*, ___ U.S. ___, 137 S. Ct. 1899, 198 L. Ed. 2d 420 (2017). The relevant facts of *Weaver* concerning prejudice are analogous to the present case. In *Weaver*, a Massachusetts trial court conducted two days of jury voir dire in a murder trial in a closed courtroom. The public and defendant's mother and her minister were excluded from the courtroom by judicial officers because the potential venire pool filled the 50-60 seat courtroom. *Id.* at 1906. Defense counsel did not object to the exclusion of the public at trial, nor did counsel raise the courtroom closure issue on direct appeal. Five years after defendant's conviction and receipt of a life sentence, defendant sought a

13

new trial, asserting ineffective assistance of counsel based on the failure to object to the courtroom closure. The Supreme Court affirmed rejection of defendant's motion for a new trial.

The core holding of *Weaver* is that if defense counsel objects to courtroom closure at trial and raises the issue on direct appeal, prejudice is presumed and defendant gets a new trial. However, where the courtroom closure issue is raised later, e.g., as in *Weaver*, in a motion for a new trial based on allegation of ineffective assistance, finality concerns prevail such that the burden is on defendant to show a reasonable probability of a different trial outcome or to show that the particular public trial violation was so serious as to render his trial fundamentally unfair. In other words, absent a timely preservation of the public trial error and a timely raising of the issue on direct appeal, a defendant alleging a public trial violation generally must show prejudice in order to get a new trial. The Supreme Court summarized as follows:

> In the criminal justice system, the constant, indeed unending, duty of the judiciary is to seek and to find the proper balance between the necessity for fair and just trials and the importance of finality of judgments. When a structural error is preserved and raised on direct review, the balance is in the defendant's favor, and a new trial generally will be granted as a matter of right. When a structural error is raised in the context of an ineffective-assistance claim, however, finality concerns are far more pronounced. For this reason, and in light of the other circumstances present in this case, petitioner must show prejudice in order to obtain a new trial. As explained above, he has not made the required showing.

*Id.* at 1913.

Notably, the *Weaver* court clarified "the concept of structural error" in this context. *Id.* at 1907. The court noted three "categories" of structural error: (1) where the

error affected some interest of defendant other than avoidance of an erroneous conviction (e.g., the right to self-representation), (2) where the error's effect is too hard to measure (e.g., where a defendant is denied the right to select his own attorney), and (3) where the error always results in fundamental unfairness (e.g., where an indigent defendant is denied an attorney or a judge fails to give a reasonable doubt instruction). *Id.* at 1908. The court observed the "critical" point to be that "[a]n error can count as structural even if the error does not lead to fundamental unfairness in every case." *Id.* Thus, while "a violation of the right to a public trial *is a structural error*," nevertheless, "*not every public-trial violation results in fundamental unfairness.*" *Id.* at 1908-09 (emphasis added).[10] The court continued:

> [W]hile the public-trial right is important for fundamental reasons, in some cases an unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint.
>
> . . . .
>
> . . . Despite its name, the term "structural error" carries with it no talismanic significance as a doctrinal matter. . . . Thus, in the case of a structural error where there is an objection at trial and the issue is raised on

---

[10] Of particular note concerning Salinas's assertion of structural error based on the trial court's failure to expressly employ a *Bone-Club* analysis before closure, the *Weaver* court opined about the importance of such written findings as follows:

> A public-trial violation can occur, moreover, as it did in *Presley* [*v. Georgia*, 558 U.S. 209, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010) (*per curiam*)], simply because the trial court omits to make the proper findings before closing the courtroom, even if those findings might have been fully supported by the evidence. See 558 U.S., at 215, 130 S.Ct. 721. *It would be unconvincing to deem a trial fundamentally unfair just because a judge omitted to announce factual findings before making an otherwise valid decision to order the courtroom temporarily closed. As a result, it would be likewise unconvincing if the Court had said that a public-trial violation always leads to a fundamentally unfair trial.*
>
> Indeed, [this] Court has not said that a public-trial violation renders a trial fundamentally unfair in every case.

137 S. Ct. at 1909-10 (emphasis added).

direct appeal, the defendant generally is entitled to "automatic reversal" regardless of the error's actual "effect on the outcome."

*Id.* at 1910 (quoting *Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). The court asked the question: "[W]hat showing is necessary when the defendant does not preserve a structural error on direct review but raises it later in the context of an ineffective-assistance-of-counsel claim?" *Id.* The answer is that defendant must show deficient performance and resulting prejudice. *Id.* The *Weaver* court further opined:

> As explained above, not every public-trial violation will in fact lead to a fundamentally unfair trial. Nor can it be said that the failure to object to a public-trial violation always deprives the defendant of a reasonable probability of a different outcome. Thus, when a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* [*v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984),] prejudice is not shown automatically. Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or . . . to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair.

*Id.* at 1911 (citation omitted).

The court explained the rationale for placing the burden on the defendant in this circumstance as follows:

> The reason for placing the burden on the petitioner in this case, however, derives both from the nature of the error and the difference between a public-trial violation preserved and then raised on direct review and a public-trial violation raised as [a later] ineffective-assistance-of-counsel claim. As explained above, when a defendant objects to a courtroom closure, the trial court can either order the courtroom opened or explain the reasons for keeping it closed. When a defendant first raises the closure in an ineffective-assistance claim, however, the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for closure.

16

*Id.* at 1912 (citation omitted).

Regarding the preference for finality in this circumstance, the court opined:

When an ineffective-assistance-of-counsel claim is raised in postconviction proceedings, the costs and uncertainties of a new trial are greater because more time will have elapsed in most cases. The finality interest is more at risk, and direct review often has given at least one opportunity for an appellate review of trial proceedings. These differences justify a different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a [later] claim alleging ineffective assistance of counsel.

*Id.* (citation omitted).

Applying the above to the facts in *Weaver*, the Supreme Court found that petitioner had not met his burden. Despite the fact that the defendant's mother and her minister had been excluded from two days of voir dire, the court found the following (among other facts) persuasive: petitioner's trial was not conducted in secret or in a remote place, the closure was limited to the jury voir dire, the courtroom remained open during the evidentiary phase of the trial, and there was a record made of the proceedings that does not indicate any basis for concern other than the closure itself. Concluding that the petitioner had not met his burden to show prejudice and, thus, was not entitled to a new trial, the Supreme Court concluded:

It is true that this case comes here on the assumption that the closure was a Sixth Amendment violation. And it must be recognized that open trials ensure respect for the justice system and allow the press and the public to judge the proceedings that occur in our Nation's courts. Even so, the violation here did not pervade the whole trial or lead to basic unfairness.

*Id.* at 1913. The same is true in Salinas's case since most of his voir dire and the rest of his trial was conducted in open court.

Applying *Weaver* to Salinas's case, it is clear that *Weaver* refutes Salinas's contention that prejudice is presumed in this context. *Weaver* rejects the notion that the voir dire closure in *Salinas,* even though such closure is a "structural error," is presumed prejudicial. In Salinas's case, there was no objection at trial and no assertion of a public-trial violation on direct appeal. In this circumstance, *Weaver* places the burden on the defendant to prove he was prejudiced by such closure. Salinas has not met that burden.[11]

CONCLUSION

We hold that under the particular facts of this case, Salinas invited the courtroom closure error that he now complains of on collateral review and is precluded from raising that claim by the invited error doctrine. Further, under both *Coggin* and *Weaver,* Salinas cannot establish that his appellate counsel was ineffective because no presumption of prejudice applies in Salinas's PRP; he has the burden of establishing that the courtroom closure here actually prejudiced him, and he has not done so. Accordingly, Division One's grant of Salinas's PRP is reversed and his PRP is denied.

---

[11] The State asks this court to remand for a reference hearing if the record is deemed insufficient to demonstrate invited error or as needed to resolve any question about appellate counsel's reason for not raising the public trial violation issue on direct appeal. While the appellate rules provide for transfer of a PRP to the trial court for a reference hearing if the petition "cannot be determined solely on the record," RAP 16.11(b), such remand is not necessary. The available record shows Salinas's initiation and advocacy regarding private questioning of jurors, and, as discussed, *Coggin* and *Weaver* place the burden on Salinas to establish prejudice. A reference hearing for the reasons suggested by the State is not warranted.

_Madsen, J._

WE CONCUR:

_Fairhurst, C.J._                    _Wiggins, J._

                                     _González, J._

                                     _Yu, J._

No. 91905-4


GORDON McCLOUD, J. (concurring)—I agree with the majority that

Salinas's lawyer invited the brief courtroom closure at issue here. He submitted

three proposed juror questionnaires that invited jurors who preferred private

questioning on sensitive issues to say so. Majority at 2-3. Those particular defense-

proffered statements on the defense-proposed questionnaires clearly formed the

basis for the trial court's adoption of that language in its own questionnaire. *Id.* at

3-4. The defense then explicitly stated, in open court, in Salinas's presence, its

suggestion for speeding up the process of allowing the jurors who requested it to

"'talk in private.'" *Id.* at 4 (quoting Verbatim Report of Proceedings (Mar. 9, 2010,

Pretrial CR 3.5 & Pretrial Mots.) at 69-70). The judge was the one who acquiesced,

not the defense. *Id.*

The defense's invitations in this case constitute invited error under our

consistent decisions on that legal doctrine. For this reason, I agree with the

majority's conclusion that the doctrine of invited error bars the defense from raising

courtroom closure as a direct challenge to a conviction on direct appeal. I also agree

1

with the majority's conclusion that the doctrine of invited error bars the petitioner from raising this closure through an ineffective assistance of counsel claim on a personal restraint petition (PRP)—the error would not have resulted in reversal on direct appeal, so it is not governed by the otherwise-applicable *Orange*[1] rule that failure to raise courtroom closure on direct appeal constitutes ineffective assistance of counsel warranting relief without proof of prejudice on a collateral challenge. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.

I write separately for two reasons. First, I disagree with the majority's assertion that *Weaver*[2] held that a petitioner alleging ineffective assistance of counsel due to failure to assert a courtroom closure claim can never prevail if "he has not met his burden of showing that he was prejudiced by the courtroom closure error." Majority at 1. In fact, *Weaver* did not require a petitioner raising this claim to prove actual prejudice to his or her own case to obtain relief, even on a postappeal collateral challenge. Instead, it held that because of the difficulty or inability to show such prejudice with the typical courtroom closure claim, the petitioner would also be entitled to relief, even without a showing of specific prejudice to his or her own case, if the closure caused "fundamental unfairness." *Weaver*, 137 S. Ct. at 1911. It listed

---

[1] *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 814, 100 P.3d 291 (2004).

[2] *Weaver v. Massachusetts*, __ U.S. __, 137 S. Ct. 1899, 198 L. Ed. 2d 420 (2017).

a showing of "fundamental unfairness" as an alternative to proof of "prejudice" as a means of gaining relief. *Id.* The majority errs in leaving out this critical alternative.

Next, I write separately because I disagree with some of the majority's lengthy discussion of invited error, including its characterization of our opinions in *Coggin* and *Momah*.[3] Majority at 6-11.

The majority states that our court recently "held" that "the usual presumption of prejudice applicable to courtroom closure claims raised on direct appeal does not apply in the PRP context." *Id.* at 7 (citing *Coggin*, 182 Wn.2d at 120). The majority credits "a lead and a concurring opinion" with together making up this holding. *Id.* The dissent in this case disagrees. Dissent at 3-4. It asserts that "[w]here a public trial violation is raised in a PRP claiming ineffective assistance of appellate counsel, our cases demonstrate that prejudice is presumed." *Id.* at 5. It cites *Morris*[4] and *Orange*, 152 Wn.2d at 814. *Id.*

The dissent certainly has the better of this argument. *Coggin* does not contain any holding of the court on the need to prove actual and substantial prejudice in this PRP courtroom closure context. The concurrence to which the majority in this case

---

[3] *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 120, 340 P.3d 810 (2014) (plurality opinion); *State v. Momah*, 167 Wn.2d 140, 153, 217 P.3d 321 (2009).

[4] *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012) (plurality opinion).

3

cites explicitly states that it is not reaching that question. *Coggin*, 182 Wn.2d at 123

("I would instead hold that Coggin invited the courtroom closure during voir dire . .

. . Thus, we need not reach the question of actual and substantial prejudice.").

We must therefore turn to our traditional rules concerning invited error. One

of the most recent summaries of that traditional test appears in *State v. Frawley*, 181

Wn.2d 452, 460-64, 334 P.3d 1022 (2014) (plurality opinion). In Frawley's case,

the court "engaged in an extensive colloquy concerning Frawley's right to be present

for . . . individual voir dire and he waived his right to be present." *Id.* at 455. The

court and counsel then interviewed some jurors individually in chambers. *Id.* The

court also closed the courtroom for all of voir dire, but not before engaging in

"another extensive colloquy" and concluding that Frawley waived the right to public

voir dire also. *Id.* at 456. In the consolidated case *State v. Applegate*, the trial court

asked, before voir dire, whether any party or member of the public would object to

closed questioning of certain jurors. *Id.* at 456-57. Defense counsel said the court

had discretion, but the State argued that the court needed to address whether the

defendant personally objected. *Id.* at 457. Eventually, the court concluded that one

juror should probably be questioned privately. *Id.* After concluding (summarily and

without any factor-by-factor elaboration) that the five *Bone-Club*[5] factors were

---

[5] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

satisfied, the court instructed Applegate that the proceedings were presumptively open and then asked whether he had any objections to questioning the single juror in chambers, away from the public. *Id.* at 457-58. Applegate conferred with defense counsel, who then told the court that he had no objection "'to going back into chambers and asking these questions without the public hearing.'" *Id.* at 458.

The two-justice lead opinion concluded that both cases involved an unconstitutional courtroom closure because neither court engaged in a real *Bone-Club* analysis. *Id.* at 459-60. But a defendant can waive the public trial right through a "knowing, voluntary, and intelligent waiver," which means at least "a written waiver signed by the defendant expressly acknowledging and waiving the right" or "an equivalent colloquy that satisfies this standard." *Id.* at 462. The lead opinion held that the State failed to prove waiver in either case. In Frawley's case, the waiver question was resolved by *Morris*, which held that a waiver of the right to presence does not constitute a waiver of the right to a public trial. *Id.* And in Applegate's case, the alleged "waiver" was not "knowing"—Applegate was never "informed of his right to a public trial or any consequences associated with waiving the right." *Id.* at 463. Moreover, "the doctrine of affirmative waiver is inconsistent with the *Bone-Club* analysis." *Id.*

A two-justice concurrence agreed that neither defendant waived the right to an open courtroom. *Id.* at 467. It concluded that neither defendant waived that right because neither was actually advised, prior to the closure, of his public trial right and the consequences of waiving it. *Id.* at 466-69 (Stephens, J., concurring).

A three-justice concurrence/dissent would have held that a litigant does not need an on-the-record colloquy to waive the right to a public trial. *Id.* at 476. Relying on invited error decisions arising from a variety of different contexts,[6] that concurrence/dissent would have held that an appellate court can infer a proper waiver of the public trial right when "a statement on the record by defense counsel . . . , fairly read, indicates the defendant knew, heard, understood, and agreed" with the lawyer's waiver. *Id.* The concurrence/dissent concluded that that standard was met in Applegate's case but not in Frawley's. *Id.* at 476-77.

These three opinions correctly cite and summarize our court's historical precedent on the topic of invited error.[7] All three leave out the gloss placed on that historical precedent by what this court itself has called the "unique" situation in *Momah*. *State v. Wise*, 176 Wn.2d 1, 14, 288 P.3d 1113 (2012); *Coggin*, 182 Wn.2d at 119. That historical precedent remains binding. Decisions based on other unique

---

[6] *Frawley*, 181 Wn.2d at 475-76.

[7] There was a separate two-justice dissent. *Id.* at 477-92.

circumstances, on which the majority in this case relies, are not binding outside of unique circumstances. Majority at 7 (quoting *Coggin*, 182 Wn.2d at 119 (quoting *Momah*, 167 Wn.2d at 153)).

Under that historical precedent, counsel's statements in Salinas's case are far more similar to the statements that I believe constituted invited error in Applegate's case than to the statements that I believe did not constitute invited error in Frawley's case. Salinas's counsel submitted three written requests to tell jurors that they could seek questioning not just away from the other jurors, but in "private." Salinas's counsel's proposals were accepted by the trial court. Salinas's counsel stated, in open court with his client present, its own suggestion for how to swear in some jurors and then get on with the task of interviewing the appropriate ones in private. I believe the rule that our prior invited error cases (except for the "unique" one) produces is that when "a statement on the record by defense counsel . . . , fairly read, indicates the defendant knew, heard, understood, and agreed" with the lawyer's waiver of the right to an open courtroom, then the waiver is valid. *Frawley*, 181 Wn.2d at 476 (Gordon McCloud, J., concurring in part/dissenting in part). Defense counsel's written and verbal statements in this case clearly fit within that category.

That is why I concur. But it is also why I write separately. I disagree with the majority's decision to expand the exception created by *Momah* (and reiterated in

one opinion in *Coggin*) beyond the "unique" circumstances it was designed to address. I would not characterize *Coggin* as overturning *Orange* and *Morris*—only four justices in *Coggin* stated that position as a holding. And I would not characterize *Weaver* as holding that criminal defendants who challenge courtroom closure via ineffective assistance of counsel claims must prove actual and substantial prejudice—it clearly said that proof of fundamental unfairness suffices, even where specific prejudice is impossible to prove.

No. 91905-4

JOHNSON, J. (dissenting)—The majority embraces a new exception to a constitutional public trial violation claim that is not only factually and legally erroneous but is also inconsistent with cases that expressly reject the argument relied on by the majority. This new exception promises to swallow the constitutional rule protecting the right to a public trial under article I, section 22 of Washington's Constitution.[1] Properly analyzed, the courtroom closure error here was not invited, appellate counsel was ineffective in failing to raise this issue on direct appeal, and the Court of Appeals' decision applying the rule adopted in our cases should be affirmed.

---

[1] "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed and the right to appeal in all cases: *Provided,* The route traversed by any railway coach, train or public conveyance, and the water traversed by any boat shall be criminal districts; and the jurisdiction of all public offenses committed on any such railway car, coach, train, boat or other public conveyance, or at any station or depot upon such route, shall be in any county through which the said car, coach, train, boat or other public conveyance may pass during the trip or voyage, or in which the trip or voyage may begin or terminate. In no instance shall any accused person before final judgment be compelled to advance money or fees to secure the rights herein guaranteed."

Factually, I disagree with the majority's characterization of the record in this case. While the majority is correct that defense counsel prepared and submitted proposed questionnaires, the trial judge did not use them. The prospective jurors were given similarly worded questions, but nothing in the record offers any support for the majority's conclusion that defense counsel urged and asked specific questions.

More importantly, regarding the decision to privately question prospective jurors in chambers, nowhere in the record is there any indication that defense counsel prompted or in any way contributed to the in-chambers closed proceeding nor, from a practical standpoint, could defense counsel control that in-chambers proceeding. The record is clear that the in-chambers questioning was the judge's idea.

I disagree with the majority's characterization, from a legal analysis viewpoint, of the issue resolved in *In re Personal Restraint of Coggin,* 182 Wn.2d 115, 119, 340 P.3d 810 (2014) (plurality opinion)—a case that raised a public trial violation in a personal restraint petition (PRP). What the court analyzed and held was that in a PRP, the petitioner raising a public trial violation must establish not only the constitutional violation but also the general requirement of establishing prejudice on collateral review. Both the *Coggin* majority and dissent rejected the

2

argument that any error was invited. *Coggin* provides no support for the majority's new rule on invited error. The facts and procedure in *Coggin* mirror those presented here, where defense counsel proposed individual juror questioning due to the claimed publicity and sensitive nature of the case. The prosecutor drafted the questionnaire, and defense counsel approved the final version. The questionnaire allowed prospective jurors an opportunity to explain answers in a "closed hearing." The court did not conduct a *Bone-Club*[2] analysis. The lead opinion stated, "In determining whether the invited error doctrine applies, we have considered whether the defendant affirmatively assented to the error, materially contributed to it, or benefited from it," and held that the defendant did not. *Coggin*, 182 Wn.2d at 119.

In this case, the Court of Appeals analyzed the invited error claim and correctly rejected that same argument because the facts did not rise to the level of invited error. Here, defense counsel similarly proposed individual juror questioning; defense counsel proposed a juror questionnaire allowing potential jurors to indicate if they preferred to discuss their answers in private. Defense counsel suggested—after the court already decided to question jurors in private— that the court bring up and swear in prospective jurors, and subsequently release

---

[2] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

jurors that did not want to speak in private. The court later asked if there were any objections, but it did not conduct a *Bone-Club* analysis. The record shows that the actual closure decision, the questioning of prospective jurors privately in chambers, and the mechanics of how this would be accomplished originated with the trial judge. The record is clear that the trial judge erroneously believed the only requirement was to ask if anyone objected.

The majority points to the fact that defense counsel, in this case, played the initiating role that led to the private questioning. Even if this were significant, the defense played the initiating role in *Coggin* as well: the defense proposed individual juror questioning. The distinguishing factor between *Coggin* and the instant case was that the State created the questionnaire, but we do not decide whether a case is or is not invited error based merely on who created the juror questionnaire.[3] The focus is on where the error occurs—the decision to close the proceeding without a *Bone-Club* inquiry.

The facts and procedure in this case also mirror those presented in *State v. Hummel*, 165 Wn. App. 749, 266 P.3d 269 (2012), where the Court of Appeals

---

[3] Our invited error analysis does not hinge on a proposed juror questionnaire because our court rules assure prospective jurors that their private information need not be disclosed to the public. For example, General Rule (GR) 31 is a procedural tool that facilitates juror privacy. It states, "Individual juror information, other than name, is presumed to be private." GR 31(j). We cannot find invited error where defense counsel proposes a questionnaire that merely recognizes the basic understanding of court rules.

reversed based on identical circumstances.[4] There, defense counsel proposed, and

the court adopted, a juror questionnaire allowing prospective jurors to inform

counsel and the court whether they preferred to discuss their answers in private.

The court asked if there were any objections, but it did not conduct a *Bone-Club*

analysis. Despite the defense wanting a juror questionnaire that suggested private

questioning, as in *Coggin* and the instant case, the Court of Appeals there correctly

did not find invited error. The facts of this case are in all material respects

identical.

Here, at most, defense counsel proposed a questionnaire that asked if some

potential jurors might prefer discussing certain questions privately. The decision to

close the courtroom was made by the trial judge. The majority finds significance in

the fact that no objection was made. However, a failure to object is not required to

preserve the closure claim, nor does a failure to object constitute invited error.

Where a public trial violation is raised in a PRP claiming ineffective assistance

of appellate counsel, our cases demonstrate that prejudice is presumed. *In re Pers.

Restraint of Morris*, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012) (plurality opinion); *In

re Pers. Restraint of Orange*, 152 Wn.2d 795, 814, 100 P.3d 291 (2004). Because the

---

[4] In fact, the same trial judge presided in this case and *Hummel*.

facts of this case did not rise to the level of invited error, the Court of Appeals

correctly held Hector Salinas is entitled to relief and should be affirmed.[5]

---

[5] Curiously, the majority includes a discussion and analysis of *Weaver v. Massachusetts*, ___ U.S. ___, 137 S. Ct. 1899, 198 L. Ed. 2d 420 (2017), a case involving interpreting the Sixth Amendment to the United States Constitution. Where we have resolved a state constitutional claim, the United States Supreme Court lacks the power to overrule those cases. Our cases analyze trial closures under both article I, sections 10 and 22. Even if *Weaver* can be read to disallow relief under the Sixth Amendment, the heightened state constitutional rights and our cases interpreting those provisions remain unaffected.